# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| NATHALIE McCAMMON-CHASE, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09 C 7450 |
| | ) |
| | ) Magistrate Judge Geraldine Soat Brown |
| CIRCLE FAMILY CARE, INC. and DR. | ) |
| BRUCE PEOPLES, M.D., in his individual | ) |
| capacity, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is plaintiff Dr. Nathalie McCammon-Chase's Motion for Partial Summary Judgment. [Dkt 66.] Defendants Circle Family Center ("CFC")and Dr. Bruce Peoples have filed their opposition to the motion (Defs.' Resp.) [dkt 75-2], and McCammon-Chase has filed her reply (Pl.'s Reply) [dkt 82].[1] For the reasons that follow, McCammon-Chase's motion is denied.

## JURISDICTION

McCammon-Chase brings claims of sex discrimination under 42 U.S.C. § 2000(e)(5) and breach of contract against CFC, and a claim of violation of the Illinois Wage Payment and Collection

---

[1] Defendants collectively filed a response to McCammon-Chase's motion, although the motion is directed only against CFC. (*See* Pl.'s Mot. at 1.)

Act, 820 Ill. Comp. Stat. §§ 115/1, *et seq.*, against both CFC and its Chief Medical Officer Bruce

Peoples. (Compl.) [Dkt 5.][2] The court has jurisdiction over the federal claim pursuant to 28 U.S.C.

§§ 1331, 1337 and 42 U.S.C. § 2000(e)(5), and supplemental jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367. The parties consented to the exercise of jurisdiction by a United

States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt 21.]


### FACTUAL BACKGROUND[3]

CFC is a not-for-profit organization licensed to do business in the state of Illinois. (Defs.'

LR Stmt. ¶ 2.) Beginning on or about September 1, 2007, McCammon-Chase was employed by CFC

as its director of the Maternal Child Health Program. (*Id.* ¶¶ 1, 5; Pl.'s LR Stmt., Ex. C, Dep. Bruce

Peoples at 170.) Shortly thereafter, Dr. Parks-Johnson became co-director of the Maternal Child

Health Program. (Pl.'s LR Stmt., Ex. B, Dep. Nathalie McCammon-Chase at 59-60.)

McCammon-Chase and CFC entered into a written employment contract (the "Agreement")

for the period of September 1, 2007 though August 31, 2009. (Defs.' LR Stmt. ¶ 5.)[4] Pursuant to

---

[2] McCammon-Chase pled other counts that were dismissed on July 23, 2010. [Dkt 45.]

[3] The following facts are taken from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1, and are cited herein as: Plaintiff's Local Rule 56.1(a)(3) Statement of Material Facts in Support of Motion for Partial Summary Judgment ("Pl.'s LR Stmt.") [dkt 68]; Defendants' Response to Plaintiff's Local Rule 56.1(b)(3) Statement of Material and Undisputed Facts and Defendants' Additional Facts ("Defs.' LR Stmt.") [dkt 75-3], Plaintiff's Response to Defendants' Local Rule 56.1(b) Statement of Additional Facts ("Pl.'s Resp. Add'l Facts") [dkt 81].

[4] Although both parties submitted differently Bates-numbered versions of the Agreement, they appear to be copies of the same document (*compare* Pl.'s LR Stmt., Ex. F *with* Defs.' LR Stmt., Ex. A), and neither party has disputed the authenticity of the other's submission. For simplicity, subsequent references to the Agreement attached to both parties' submissions will be cited as "Agreement."

the Agreement, either party could terminate without cause by providing the other with written 90-day notice. (Agreement at 2.) In her complaint, McCammon-Chase alleges that she was constructively discharged and tendered a resignation letter in May 2009, but continued working until she was terminated on September 3, 2009. (Compl. ¶¶ 45, 47.) The parties agree that she worked for CFC at least through the August 31, 2009 expiration of the Agreement. (Defs.' LR Stmt. ¶ 11; Ans. ¶ 47 [dkt 16].)

Pursuant to the Agreement, McCammon-Chase promised, among other things, to "develop and expand CFC's Maternal Child Program," to provide family practice services including prenatal, deliveries and post-partum care with a minimum expectation of 2136 patient care visits, or "encounters," per year, and to participate in on-call after hours services. (Agreement at 1-2.) She promised to "work collaboratively with CFC staff to assure quality services to CFC patients and meet productivity goals." (*Id.* at 2.) In turn, CFC promised to employ McCammon-Chase as a full-time provider of medical care to CFC patients, and to pay her a specified compensation package including a base salary and bonuses for delivering babies. (*Id*. at 1.) It further committed to "provide additional OB Provider support . . . to assist with deliveries and call" after 90 days of her employment, and to pay her $50 per hour for on-call coverage beginning on the 91st day if it had not retained a third provider by that time. (*Id*.)

CFC paid McCammon-Chase quarterly delivery bonuses at the beginning of their relationship, although the parties dispute the timeliness of those payments. (Def.'s LR Stmt. ¶ 10.) After its payment to McCammon-Chase for deliveries through September 30, 2008, however, CFC made no further bonus payments due to inadequate revenue. (Defs.' LR Stmt. ¶¶ 10, 11.) According to CFC, when it learned that its financial difficulties meant it could no longer pay quarterly bonuses,

3

it promptly notified McCammon-Chase. (*Id*.) McCammon-Chase continued to perform both vaginal and cesarean deliveries until the end of her contract term. (*Id*. ¶ 11.)

CFC did not retain an additional obstetrics provider by the 91st day of McCammon-Chase's employment. (Defs.' LR Stmt. ¶ 13.) As a result, McCammon-Chase worked on-call hours to cover obstetric shifts. (*Id*. ¶ 13; Peoples Dep. at 254.) She was not paid for the on-call hours that she worked. (Defs.' LR Stmt. ¶ 14.) According to CFC, it made good faith efforts to hire an additional obstetrics provider, but was unable to do so. (*Id*. ¶ 13.) CFC says that it did, however, arrange for family physician Dr. Tin Fang and physician assistant Kristen Hainey to assist McCammon-Chase and Parks-Johnson by providing patients with routine prenatal and post-natal care. (*Id.* ¶ 21; Defs.' LR Stmt., Ex. B, Aff. Bruce Peoples ¶ 14.) Although McCammon-Chase disputes much of CFC's statement, she does not dispute that portion. (Pl.'s Resp. Add'l Facts ¶ 21.)

CFC says that it informed McCammon-Chase and Parks-Johnson in a February 2008 meeting that it could not afford to pay their on-call time. (Defs.' LR Stmt. ¶ 21.) It says that it offered both doctors a waiver of the 90-day termination notice provision if either chose to resign, or the ability to stay with CFC and waive the right to on-call pay. (*Id.*; Peoples Aff. ¶ 14.) McCammon-Chase disputes that. (Pl.'s Resp. Add'l Facts ¶ 21.) McCammon-Chase continued working for CFC after the meeting and continued working on-call hours. (Pl.'s Resp. Add'l Facts ¶ 21; Defs.' LR Stmt. ¶ 13; Peoples Aff. ¶ 14.)

## THE PRESENT MOTION

McCammon-Chase seeks partial summary judgment on her claim that CFC breached the Agreement, which she argues it did in two ways: first, by failing to pay her for the on-call hours she worked after her 90th day of employment; and second, by failing to pay her bonuses for deliveries she performed after September 13, 2008. (Pl.'s Mem. At 7.) [Dkt 67.] CFC admits that it did not pay McCammon-Chase for on-call work, but says that she waived that provision of the Agreement after CFC advised that it couldn't afford to pay it, and that, in any event, she suffered no damages as a result of its nonpayment. (Defs.' Resp. at 5-6, 9-10.) CFC also admits that it did not pay McCammon-Chase delivery bonuses after September 13, 2008, but says that it is not liable for breach of contract since McCammon-Chase materially breached the contract in a number of ways, including failing to keep and submit necessary records. (*Id*. at 6-9.) McCammon-Chase argues that CFC's defenses are affirmative and have been waived since they were not pled earlier, and that even if they are considered, they are not sufficiently supported to withstand her motion for summary judgment. (Pl.'s Reply at 2-15.)

## LEGAL STANDARD

A party may move for summary judgment on a claim or defense, or part of a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* To oppose a motion for summary judgment successfully, the responding party may not simply rest on its pleadings, but rather must submit evidentiary materials showing that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine dispute of material fact exists when there

is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *Bombard v. Ft. Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996). In determining whether a genuine dispute of material fact exists, the court construes all facts and draws all reasonable and justifiable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255.

Under Rule 56.1 of the Local Rules for the Northern District of Illinois, the party moving for summary judgment must submit a statement of material facts as to which that party contends there is no genuine issue and that entitles the party to judgment as a matter of law. N.D. Ill. Loc. R. 56.1(a). The statement must be supported by specific reference to affidavits, parts of the record or other supporting materials relied upon to support the facts that are set forth in each paragraph. *Id*. The opposing party must provide a response that either admits or denies each of the moving party's statements, and must specifically cite affidavits, parts of the record or other supporting evidence relied upon to support any denials. *Id*. ¶ (b)(3). Where the opposing party fails to identify such materials, the moving party's allegations, where properly supported, will be deemed admitted. *Id*.

Local Rule 56.1 "serves an important function by ensuring that the proposed findings of fact are in a form that permits the district court to analyze the admissible evidence supporting particular factual propositions and determine precisely what facts, if any, are material and disputed." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th Cir. 2010). The submission of arguments and non-responsive facts in a Local Rule 56.1 statement defeats its purpose. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000). When reviewing Local Rule 56.1

statements, the court need not "wade through improper denials and legal arguments in search of a genuinely disputed fact." *Id.* at 529; *accord Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). The court carefully reviews each Local Rule statement and disregards any intertwined argument, conclusion or unsupported fact.[5]

## DISCUSSION

**I.      Unpaid On-Call Time and Delivery Bonuses**

McCammon-Chase claims that CFC breached the Agreement by not paying her on-call time after her 90th day of employment. (Pl.'s Mem. at 7.) Pursuant to the Agreement, CFC:

> 12.      Agree[d] to provide additional OB [Obstetrics] Provider support (with active participation from the OB providers) to assist with deliveries and call, after ninety days of employment. If after a good faith effort, the CFC medical director determines that we are unable to recruit a third medical doctor within the 90 day period, on day 91 and thereafter, CFC agrees to pay an hourly rate of $50 for back-up on-call coverage provided in the absence of the third medical doctor.

(Agreement at 1.)

She also claims that CFC breached the agreement by failing to pay her bonuses for deliveries.

(Pl.'s Mem. at 7.) Pursuant to the Agreement, CFC promised that it would:

> 3.      Pay quarterly bonuses to Physician as mutually agreed upon from funds generated from deliveries. After satisfactory reconciliation the bonuses will be paid within three weeks from the close of the quarter.

. . . . .

---

[5]   In this case, neither party's statement fully complied with the rules. Both parties improperly included legal arguments and additional facts merged within their responsive statements. (*See, e.g.*, Pl.'s Resp. Add'l Facts ¶¶18, 21; Defs.' LR Stmt. ¶¶ 3, 4, 11, 17.) CFC's motion to strike paragraph 17 of Plaintiff's Local Rule 56.1 Statement of Facts as irrelevant, which was not presented as a separate motion but rather buried in CFR's Response to McCammon-Chase's Statement, is denied. (*See* Defs.' LR Stmt. ¶ 17.)

13.     . . . [P]ay the Provider per delivery according to the following - Productivity
Drawn Bonus Structure: CFC will pay $400.00 per vaginal delivery and $625.00 per
C-Section within 3 weeks after the end of the quarter.

(Agreement at 1.)

To establish a breach of contract, McCammon-Chase must demonstrate: (1) the existence of

a contract, (2) the performance of its conditions by the plaintiff, (3) a breach by the defendant, and

(4) damages as a result of the breach. *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001);

(applying Illinois law); *Asset Exchange II, LLC v. First Choice Bank.*, 953 N.E.2d 446, 454-55 (Ill.

App. 1st Dist. 2011).[6]

It is undisputed that the parties entered into a valid employment agreement that was effective

from Sept 1, 2007 through August 31, 2009.  It is also undisputed that the contract required CFC to

hire a third obstetrics medical provider or pay McCammon-Chase for on-call time after 90 days

(approximately November 30, 2007), and that CFC did neither.  Although CFC says that it assigned

a family physician and a physician assistant to assist McCammon-Chase with "clinic patient

overflow," it does not argue that doing so relieved it of its obligation to either hire a third provider

or pay McCammon-Chase $50 per on-call hour.  (Defs.' Resp. at 5-6; Peoples Aff. ¶ 14.)  Likewise,

it is also undisputed that although CFC paid some delivery bonuses, it paid McCammon-Chase no

bonuses for deliveries she performed after September 30, 2008.  Accordingly, it would initially seem

that McCammon-Chase is entitled to summary judgment, but CFC makes several arguments in

opposition to summary judgment.

---

[6] It is undisputed that Illinois law applies to McCammon-Chase's breach of contract claim.
(Pl.'s Mem. at 5; Defs.' Resp. at 5.)

## II.    CFC's Opposition

### A.    No damages from breach

First, CFC argues that McCammon-Chase cannot demonstrate the element of damages. (Defs.' Resp. at 9-10.)  Certainly, Illinois law requires a plaintiff to show some damages in order to recover for a breach of contract claim.  *TAS Distribg. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007) (citing Ill. Pattern Jury Instr. - Civil 700.11 (2011)).  CFC argues that no damages arose from its breaches because McCammon-Chase earned more with CFC than in her previous position and at least as much as she had contemplated when she signed the Agreement with CFC.  (Defs.' Resp. at 9-10.)  McCammon-Chase admits that her income in both 2007 and 2008 was approximately what she was earning at her prior employment.  (Pl.'s Resp. Add'l Facts ¶¶ 35-40.)  CFC provides no authority, however, to suggest that damages on McCammon-Chase's claim should be determined with reference to anything other than the terms of the Agreement.  "The purpose of damages for breach of contract is to put the injured party in the position it would have been in had the contract been fully performed."  *Palmolive Tower Condos., LLC v. Simon*, 949 N.E.2d 723, 730 (Ill. App. 1st Dist. 2011); *accord Collins v. Reynard*, 607 N.E.2d 1185, 1186 (Ill. 1993).

The Agreement plainly provides McCammon-Chase an hourly rate of pay for on-call work in the absence of a third medical provider.  She worked the on-call hours but she was not paid for them as the Agreement required.  Likewise, the Agreement required bonuses for deliveries. McCammon-Chase delivered babies after September 2008 but was not paid the bonuses.  Where a contract is unambiguous, it is to be enforced as written without looking to extrinsic evidence.  *Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) (applying Illinois law).  Whether McCammon-Chase's total income for a given year exceeds her hopes is not relevant to a determination that she has been

damaged by CFC's failure to pay what the contract plainly required. There is no genuine dispute that McCammon-Chase was damaged as a result of CFC's breach.

B.     Waiver of the breach relating to payment for on-call time

Second, CFC argues that McCammon-Chase impliedly waived her claim for on-call pay and any breach by CFC in that respect. (Defs.' Resp. at 5-6.) Before getting to the substance of that argument, however, there is a question of whether CFC can make that argument now. McCammon-Chase asserts that CFC's waiver argument is an affirmative defense that is itself waived because CFC failed to raise it in its answer to the complaint and has never since moved to amend its pleading. (Pl.'s Reply at 2-5.)

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . waiver." Fed. R. Civ. P. 8(c). "[I]f a defendant does not raise defenses at the time of filing an answer, those defenses are deemed waived." *Castro v. Chi. Hous. Auth.*, 360 F.3d 721, 735 (7th Cir. 2004). It is well established that the purpose of the waiver rule "is to avoid surprise and undue prejudice to the plaintiff by providing her notice and the opportunity to demonstrate why the defense should not prevail." *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997).

CFC did not assert the affirmative defense of waiver in its answer to McCammon-Chase's complaint, nor has it subsequently sought leave to do so. As McCammon-Chase acknowledges, however, she was on notice of CFC's waiver defense because CFC raised it during discovery. (Pl.'s Reply at 5; Pl.'s Resp. Add'l Facts Ex. A ¶¶ 13, 17.) Indeed, in response to a contention interrogatory, CFC asserted waiver as its *only* reason for denying McCammon-Chase's allegation

that the Agreement required she be paid for on-call time. (*Id*. ¶ 13.)

The rule that affirmative defenses not raised in an answer are waived is not to be applied rigidly. *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1123 (7th Cir. 1998); *see also* Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given where justice so requires). "[A] delay in raising an affirmative defense only results in waiver if the other party is prejudiced as a result." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 632 (7th Cir. 2010) (no error in considering affirmative defense first raised at summary judgment where plaintiff should have been on notice and no prejudice was shown); *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005) (no error in consideration of affirmative defense raised at summary judgment where plaintiff was aware of the defense despite defendant's failure to plead it); *compare with Venters*, 123 F.3d at 969 (waiver where affirmative defense was first raised in summary judgment reply depriving plaintiff of opportunity to respond).

McCammon-Chase cannot be surprised by CFC's waiver argument because CFC expressly asserted it during discovery. Moreover, she points to no specific prejudice resulting from consideration of the defense now. Upon this record, CFC's affirmative defense of waiver will not be deemed to be waived.[7]

The next issue is whether the affirmative defense of waiver is supported by sufficient

---

[7] The "mend the hold" doctrine, raised in McCammon-Chase's reply (*see* Pl.'s Reply at 3-4), does not dictate another result. The mend the hold doctrine prohibits a defendant in a breach of contract suit from changing its defenses in the midst of the suit, at least without good reason to do so. *Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 614 (7th Cir. 2012). Illinois recognizes the doctrine. *See, e.g., id.*; *Trossman v. Philipsborn*, 869 N.E.2d 1147, 1166 (Ill. App. 1st Dist. 2007); *AGM II, LLC v. Stadelman*, No. 07 C 1980, 2008 WL 4104358 at *7 (N.D. Ill. Aug. 26, 2008) (collecting cases). "When there is no prejudice to the opposing party, invoking the doctrine of mend the hold to bar a valid defense is overkill." *Ryerson*, 676 F.3d at 614.

evidence to raise a genuine dispute of material fact. Waiver may be implied where the "conduct of the person against whom waiver is asserted is inconsistent with any other intention than to waive it." *Costello v. Grundon*, 651 F.3d 614, 641 (7th Cir. 2011) (applying Illinois law). "Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991). "A party to [a] contract may waive . . . a breach of the contract provisions by conduct manifesting a continued recognition of the contract's existence after learning of the breach thereof, such as by continuing to accept performance of the contract and to have the benefit thereof." *Chi. College of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1343 (7th Cir. 1983) (internal quotations omitted).

According to CFC, on or about February 12, 2008, its then Chief Executive Officer Reuben Pettiford, Chief Financial Officer Patrick Nwaezeigwe, and Chief Medical Officer Bruce Peoples met with McCammon-Chase and Parks-Johnson and advised them that CFC could not afford on-call pay. (Defs.' LR Stmt., Ex. C., Aff. Patrick Nwaezeigwe ¶ 12; Ex. G, Dep. Patrick Nwaezeigwe at 258-59.) Nwaezeigwe attests that, before the meeting, he showed McCammon-Chase and Parks-Johnson certain of CFC's financial reports and explained that CFC did not have sufficient funds to pay them for on-call coverage. (Nwaezeigwe Aff. ¶ 12.) He also states that at the February 12 meeting, where he was present along with McCammon-Chase, Parks-Johnson, Pettiford, and Peoples, they discussed the financial problems of CFC in general and of the Maternal Child Healthcare program in particular. To alleviate the pressure on McCammon-Chase and Parks-Johnson, they discussed training other staff members to see obstetrical patients in the clinic, allowing the doctors more free time and less stress. According to Nwaezeigwe, Pettiford told both doctors at the meeting that if they were not satisfied with that arrangement, they could terminate their

respective employment contracts without notice. (*Id.*) Nwaezeigwe states that both McCammon-Chase and Parks-Johnson agreed to this arrangement, and said they would continue their work at CFC. (*Id.*) Peoples similarly attests that Pettiford advised the doctors at the meeting that they could terminate their agreements immediately without the 90-day notice or remain with CFC and waive the on-call payment provision. (Peoples Aff. ¶ 14.) It is undisputed that McCammon-Chase remained with CFC until the expiration of the Agreement and that she continued to work on-call shifts. According to CFC, therefore, McCammon-Chase waived the provision. (Defs.' Resp. at 6.)

McCammon-Chase has a threshold objection to any consideration of Peoples' and Nwaezeigwe's testimony about Pettiford's statements. She claims that the testimony is "classic hearsay," and therefore insufficient to raise a dispute of material fact. (Pl.'s Reply at 11-12.)

Certainly, CFC may not rely on inadmissible evidence to survive a summary judgment motion. *See Bombard*, 92 F.3d at 562 ("The evidence relied upon must be competent evidence of a type otherwise admissible at trial."). However, Peoples' and Nwaezeigwe's testimony as to what Pettiford said at the meeting is not hearsay. Both witnesses state that they were present at the meeting at which Pettiford allegedly made the statements. Without making any judgment as to whether a trier of fact would accept Peoples' and Nwaezeigwe's testimony, the words that they attribute to Pettiford would arguably be notice to McCammon-Chase of CFC's intention not to comply with the provision providing for on-call pay, and an offer to waive a provision in the contract requiring McCammon-Chase to give notice of termination. As such, Pettiford's words are a verbal act.

"Statements that constitute verbal acts (*e.g.*, words of contract or slander) are not hearsay because they are not offered for their truth." *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir.

13

2007).  The hearsay rule has no application where the only question is whether the statement was made, and there is no need to cross-examine the declarant.  Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* vol. 5, § 801.11[3] (Joseph M. McLaughlin ed., Matthew Bender 2011).  "The effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights."  Fed. R. Evid. 801(c) advisory comm. n. (1972).

Substantively, McCammon-Chase argues that Peoples' and Nwaezeigwe's testimony is contrary to Pettiford's own testimony.  (Pl.'s Reply at 12.)  Pettiford testified that he did not tell McCammon-Chase at the meeting that she had the option of resigning, and that he did not recall McCammon-Chase ever waiving any provision of her Agreement with CFC.  (Pl.'s Resp. Add'l Facts, Ex. E, Dep. Reuben Pettiford at 200, 280-81.)  According to Pettiford, if McCammon-Chase had agreed to waive a contract provision, he "most likely . . . would have" created an addendum or otherwise redrafted the contract to reflect the change.  (Pettiford Dep. at 200.)

Contrary testimony, however, cannot merit summary judgment for McCammon-Chase.  "It is not for courts at summary judgment to weigh evidence or determine the credibility of a witness' testimony; we leave those tasks to factfinders."  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011) (internal citation and quotation omitted).  Construing the evidence before the court in the light most favorable to CFC, as must be done on McCammon-Chase's motion, a reasonable factfinder could find that CFC advised McCammon-Chase of its intention not to pay for on-call time.

McCammon-Chase further argues that CFC has advanced "*no argument or factual basis whatsoever* from which a jury could infer that [she] waived her right to on-call pay *retroactively*, i.e., for work done prior to the meeting on February 12, 2008.  (Pl.'s Reply at 12 (emphasis in original).)

At the time of the February 12, 2008 meeting, McCammon-Chase was presumably entitled to on-call pay for time after November 30, 2007, more than two months. In CFC's version of the meeting as described above, McCammon-Chase was told that she would not be paid for on-call time, and she agreed to continue to work rather than terminate immediately. CFC does, in fact, raise an argument from this that McCammon-Chase waived her right to on-call pay both retroactively and prospectively.

Another question is whether the facts taken in the light most favorable to CFC would constitute a legally cognizable defense to McCammon-Chase's claim. In her reply brief, McCammon-Chase argues that CFC's version of the facts, even if taken as true, do not establish waiver, but rather a proposed unilateral contract modification for which there was no consideration. (Pl.'s Reply at 10-11.) McCammon-Chase states that, under Illinois law, a party cannot unilaterally modify a contract without consideration, and that continued employment is not sufficient consideration for an employer's unilateral modification of an employment contract. (*Id.* (citing *Doyle v. Holy Cross Hosp.* 708 N.E.2d 1140, 1144-46 (Ill. 1999).)

Under the posture of the present motion, CFC has had no opportunity to respond to that argument, which was raised in McCammon-Chase's reply brief. In effect, McCammon-Chase is asking for summary judgment not only on its claim but also on CFC's waiver defense, which has not yet been pled. Although the court is reluctant to prolong this case further, the better course is to allow CFC a short time to file (if it chooses to do so) an affirmative defense of waiver, and then permit McCammon-Chase to respond by motion if she chooses to do so, or to proceed to trial on the defense.

C.    Material breach

According to CFC, it is not liable to pay the delivery bonuses or pay for McCammon-Chase's on-call time because McCammon-Chase did not perform all of the contract's requirements but rather breached the contract by, *inter alia,* failing to abide by CFC's policies and procedures. (Defs.' Resp. at 6-9.) McCammon-Chase again argues that CFC's defense is an affirmative one that has been waived by CFC's failure to plead it. (Pl.'s Reply at 2-5.)

Although McCammon-Chase is correct that CFC did not allege an affirmative defense of material breach in its answer, CFC's material breach argument is merged with its challenge to McCammon-Chase's claim that she performed under the Agreement, a claim as to which she carries the burden. "Plaintiffs cannot succeed on a breach of contract claim unless they demonstrate their own performance of the contract's requirements." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 691 (7th Cir. 2011).

> The doctrine of material breach is simply the converse of the doctrine of substantial performance. Substantial performance is performance without a material breach, and a material breach results in performance that is not substantial.

E. Allan Farnsworth, *Farnsworth on Contracts*, vol. II, § 8.16, 518 (3rd ed., Aspen Publ. 2004). In its answer, CFC denied that McCammon-Chase performed under the Agreement and affirmatively alleged some of the same asserted misdeeds it complains of now. (*See* Ans. ¶¶ 13, 16, 17, 20, 62.) It is well established in Illinois that "'only a *material* breach of a contract provision will justify non-performance by the other party.'" *Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 715 (7th Cir. 1993) (emphasis in original) (quoting *Borys v. Rudd*, 566 N.E.2d 310, 315 (Ill. App. 1st Dist. 1990)); *accord Mohanty v. St. John Heart Clinic*, 866 N.E.2d 85, 95 (Ill. 2007). A minor nonmaterial breach does not justify nonperformance. *Id.* at 95-96.

To determine whether a breach is material, some Illinois courts ask "whether performance of the disputed provision was the *sine qua non* of the agreement, *i.e.*, of such a nature and of such importance that the contract would not have been made without it." *Elda Arnhold & Byzantio, LLC v. Ocean Atlantic Woodland Corp.*, 284 F.3d 693, 700 (7th Cir. 2002) (internal quotations omitted, collecting Illinois cases). Other courts state that "the question of whether a breach is material, thereby discharging the other party's duty to perform, is based on the inherent justice of the matter." *Id.* (same).

"[T]he materiality inquiry [under Illinois law] focuses on two interrelated issues: (1) the intent of the parties with respect to the disputed provision; and (2) the equitable factors and circumstances surrounding the breach of the provision." *Id.* at 700. It "is a complicated question of fact, involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal nonperformance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage." *Arrow Master, Inc.,* 12 F.3d at 715 (internal quotations omitted).

The issue on this summary judgment motion is whether, viewing the facts in the light most favorable to the non-movant, CFC, there is a genuine question of fact as to whether McCammon-Chase substantially performed the Agreement; in other words, whether there are facts from which a reasonable jury could determine that McCammon-Chase materially breached the Agreement, entitling CFC to a trial on that issue.

According to CFC, McCammon-Chase breached her contractual obligations by failing to abide by CFC policy and procedures and to maintain proper records of patient care and other records

necessary for CFC's administration. (Defs.' Resp. at 8.) CFC has a laundry list of McCammon-Chase's alleged failings, specifically that she:

> 1. failed to submit required encounter forms in a timely way, and submitted improper or incomplete forms;
> 2. failed to follow CFC scheduling procedures;
> 3. worked part-time at another hospital while employed full-time by CFC and in violation of the prohibition against work at another hospital;
> 4. did not submit required proof that she was tested for swine flu before returning to work;
> 5. incurred debts in the name of CFC without prior permission:
> 6. did not maintain adequate records of patient care as required by the Agreement;
> 7. did not work collaboratively with the billing department to reconcile patient encounter forms properly;
> 8. did not develop the Maternal Child Healthcare Program and employed abusive language with her supervisor and staff.

(Defs.' Resp. at 8-9; Defs.' LR Stmt. ¶¶ 15, 18, 22-30, 33-34.) It supports each of its claims of material breach by reference to the affidavits of Peoples and Nwaezeigwe.

McCammon-Chase responds to many of these accusations by saying that she disputes the facts and reserves the right to fully present all the evidence regarding the facts at trial, but that for purposes of summary judgment the facts are not material. (Pl.'s Resp. Add'l Facts ¶¶ 22-30, 33-34.) That is *all* she says in response to the following statements: that McCammon-Chase did not complete patient charts in a thorough and timely manner; that she failed to comply with numerous requests that she complete encounter forms and patient charts; and that she failed to properly complete necessary documents in patient files, resulting in incomplete files and discrepancies between billing submissions and patient files. (Pl.'s Resp. Add'l Facts ¶¶ 32-34.) Accordingly, those facts are deemed admitted for purposes of the motion. *See* N.D. Ill. Loc. R. 56.1(b)(3); Fed. R. Civ. P. 56(e)(2).

As to other accusations, McCammon-Chase' responses go further, some responses

identifying evidence disputing the statement and some responses not directly on point. For example, as to the accusation that she did not maintain adequate patient care records, she responds, "Submission and tracking of encounter forms was an ongoing problem for all CFC staff" citing her own deposition testimony. (Pl.'s LR Resp. ¶ 29.) That is effectively a tacit admission of the statement. As to the accusation that she incurred debts in the name of CFC without Peoples' permission, she responds that the purchases were paid for from government grant monies and therefore CFC did not incur debt, again citing her own testimony. (*Id*. ¶ 28.) That offers an explanation of the circumstances but does not expressly deny it.

CFC argues that each of the infractions are material breaches of the contract because each infraction "put CFC in possible jeopardy of losing its accreditation and/or funding for having incomplete patient records." (Defs.' Resp. at 9.) Peoples and Nwaezeigwe attest that the timely submission of encounter forms is "critical" to the operation of CFC, and that McCammon-Chase submitted forms late or with various errors. (*See* Peoples Aff. ¶ 5; Nwaezeigwe Aff. ¶ 5 .) According to Peoples, CFC's procedure states that patient medical records documentation will be completed within 24 hours of providing services, so that CFC can prepare billing to be submitted to third-party payors such as Medicare. (Peoples Aff. ¶ 5.) Once the billing department has a signed completed encounter form, it is entered into the system and posted for payment. (*Id.* ¶ 7.) Nwaezeigwe states that McCammon-Chase submitted her patient encounter forms up to two months late "numerous times" and that he told her that she had to submit them on a timely basis because CFC was in such a difficult cash flow position that it was struggling to make payroll. (Nwaezeigwe Aff. ¶ 5.)

The Agreement also supports the argument that the proper and timely completion of

encounter forms is material to the bonuses.  It provides that bonuses for deliveries will be paid quarterly "[a]fter satisfactory reconciliation . . . ." (Agreement at 1.)  According to Peoples, the reconciliation process involved the review of the daily print out of patients seen at the clinic, and the submitted, signed encounter forms, with the final step being payment for services.  (Peoples' Aff. ¶ 7.)  He states that CFC had "severe problems with the reconciliations" because McCammon-Chase's encounter forms were often submitted late or not at all.  (*Id.*)

Taking the evidence in the light most favorable to CFC, as the court must on the present motion, a reasonable jury could find that McCammon-Chase's failure to comply with CFC's procedures for documenting services materially breached the Agreement by impeding the billing and collection of payment by CFC, causing or contributing to the cash flow problem that CFC says made it impossible to hire a third doctor or pay for McCammon-Chase's on-call time, and preventing the "satisfactory reconciliation" that is an express condition to the obligation to pay delivery bonuses.

This is, of course, not a finding that CFC has proved that McCammon-Chase committed a material breach.  Rather, it is merely a decision that the movant, McCammon-Chase, has not demonstrated that there is no genuine issue of material fact.  Accordingly, her motion must be denied.

## CONCLUSION

For the foregoing reasons, plaintiff Nathalie McCammon-Chase's Motion for Partial Summary Judgment [dkt 66] is denied.  Defendant Circle Family Care, Inc., may file an affirmative defense of waiver, if it chooses to do so,  no later than September 14, 2012.  This is not a ruling on

the legal sufficiency of any such affirmative defense.  This matter is set for a status hearing on September 25, 2012 at 9:45 a.m., at which time the court intends to set a trial date.

**IT IS SO ORDERED.**

_____
Geraldine Soat Brown
United States Magistrate Judge

**DATED: September 4, 2012**